STATE OF CONNECTICUT *v.* KEVIN MARSHALL
(AC 24373)

Lavery, C. J., and Flynn and West, Js.

Argued October 27, 2004—officially released February 22, 2005

*Andrew S. Liskov*, special public defender, for the appellant (defendant).

*Proloy K. Das*, deputy assistant state's attorney, with whom, on the brief, were *Christopher L. Morano*, chief state's attorney, and *John H. Malone*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Kevin Marshall, appeals from the judgments of conviction, rendered after a jury trial, of two counts of burglary in the third degree in violation of General Statutes § 53a-103 and two counts of larceny in the third degree in violation of General Statutes § 53a-124. On appeal, the defendant claims that the trial court improperly admitted into evidence (1) a prior statement of the codefendant, Joseph Grant, (2) evidence of the police chase that resulted in Grant's arrest and (3) evidence of the defendant's four other burglary convictions. He also claims that the prosecutor engaged in misconduct. We disagree and affirm the judgments of the trial court.

The jury reasonably could have found the following facts. In February, 2001, the defendant and Grant burglarized several gasoline station convenience stores in Portland, Southington, Windsor Locks, Rocky Hill, Newington, Plainville and Simsbury. The Windsor Locks and Simsbury burglaries are the subject of this appeal.[1]

On February 15, 2001, Officer David Provencher of the Windsor Locks police department was performing his routine patrol when he found that the lock cylinder to the front door of an Exxon gasoline station had been removed and the merchandise inside strewn on the

[1] The defendant entered guilty pleas under the *Alford* doctrine to burglary in the third degree in connection with the Southington, Rocky Hill, Newington and Plainville burglaries. See *North Carolina* v. *Alford*, 400 U.S. 25, 37–38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

floor. He notified the police dispatcher and requested backup assistance. The lock was lying on the ground a few feet from the door and bore marks that appeared to have been made by pliers or vice grips. The use of a police dog revealed that the burglars had parked a car close to the front door of the store and then used the car to flee. The store manager testified that the burglars had taken forty-five cartons of cigarettes worth approximately $2800 to $3000.

On February 27, 2001, the owner of a Citgo gasoline station and convenience store in Simsbury discovered that the front door lock to his store had been broken. Looking through the glass door, he noticed his merchandise scattered all over the floor. He immediately contacted the police. Officer Michael Scheidel of the Simsbury police department reported to the scene and found that the lock to the front door had been pried out and was left six to eight feet from the doorway. The lock cylinder had tool marks on it. The owner discovered that someone had stolen thirty-seven cartons of cigarettes worth approximately $1475 at retail value.

Grant and the defendant became suspects in those burglaries. On February 28, 2001, at approximately 2:13 a.m., Trooper Shawn Corey of the state police attempted to stop a maroon automobile in the parking lot of a gasoline station in Bolton, which was closed. He activated his vehicle's lights and sirens, but the automobile was driven away, and a pursuit ensued. At one point, Corey drove his vehicle alongside the automobile such that he could see the passenger, whom he identified in court as the defendant. Subsequently, the driver and the passenger got out of the automobile before it crashed into a snowbank. Corey tackled and apprehended Grant, but the defendant jumped over a fence and escaped. Inside the abandoned vehicle, Corey found a Craftsman screwdriver, two pairs of latex gloves, a

green garbage pail and the defendant's wallet, which contained his state issued identification card. Vice grips were found where the defendant had jumped over the fence.

Grant was taken into custody. He later gave a statement in which he confessed to and provided a detailed account of the two men's burglary spree. During each of the burglaries, Grant and the defendant would drive to the front door of a closed convenience store. The defendant, wearing latex gloves, would open the front door by "spinning out" the cylinder lock with vice grips and a screwdriver. They then would enter the store with a large garbage pail. Once inside, they would fill the pail with cartons of cigarettes. They then would take those goods and flee, leaving the store in disarray. The stolen cigarettes later were sold to the A. C. Convenience Store in Hartford, and Grant and the defendant would divide the money. Additional facts will be set forth as necessary.

I

The defendant claims that the court improperly admitted into evidence a prior statement Grant gave to the police. The defendant argues that it was harmful error for the court to admit the statement as substantive evidence under the rule of State v. Whelan, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), because it was (1) not sufficiently inconsistent and (2) not given under the necessary conditions of reliability and trustworthiness. We disagree.

On March 8, 2001, Grant called Detective Thomas Dillon of the Wethersfield police department to tell Dillon that he had information he wanted to provide. Grant provided Dillon with a signed, sworn statement on March 16, 2001, detailing several burglaries that Grant and the defendant had committed. Grant also

identified several businesses in photographs that Dillon showed him as establishments that Grant and the defendant had burglarized.

That document was entered into evidence as a *Whelan* statement. In *State* v. *Whelan*, supra, 200 Conn. 743, our Supreme Court "adopted the rule allowing the substantive use of a prior inconsistent statement if: (1) the statement is in writing; (2) it is signed by the declarant; (3) the declarant has personal knowledge of the facts set forth in the statement; and (4) the declarant testifies at trial and is subject to cross-examination. . . . A *Whelan* claim is *evidentiary* in nature and, accordingly, the defendant bears the burden of establishing that the trial court's erroneous ruling was harmful to him in that it probably affected the outcome of the trial. . . . The admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Emphasis added; internal quotation marks omitted.) *State* v. *Goodson*, 84 Conn. App. 786, 795, 856 A.2d 1012, cert. denied, 271 Conn. 941, 861 A.2d 515 (2004).

The defendant argues that he preserved the issue for appeal. We disagree. When the state offered the statement into evidence, the defendant objected. When the court asked for the basis of his objection, the defendant stated, "Yes, Your Honor. The trustworthiness of the actual statement that was given by—the actual person cannot verify the trustworthiness of the evidence, the document that's going in. I know there is a ruling that a statement by a coparty can go into evidence, but it would have to be verified by the actual person who gave the statement." The court overruled the objection, stating that a foundation had been laid and that the

objection pertained to the weight of the evidence, not its admissibility.

"Appellate review of evidentiary rulings is ordinarily limited to the specific legal [ground] raised by the objection of trial counsel. . . . The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial. . . . To permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party." (Citation omitted; internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 556, 821 A.2d 247 (2003). The defendant objected on the ground that the person who made the statement had not verified it in court. Because the grounds claimed on appeal are different, we conclude that the defendant did not preserve his claim, and we turn to his alternate argument that review of his claim is warranted under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"In *State* v. *Williams*, [231 Conn. 235, 250, 645 A.2d 999 (1994)] our Supreme Court held that it was improper, under *State* v. *Whelan*, supra, 200 Conn. 743, to admit into evidence the prior inconsistent statement of an individual who had been a witness in a prior proceeding where the declarant was not a witness in the trial in which the statement was admitted under *Whelan*. Our Supreme Court in *Williams*, however, stated that this was a harmless 'evidentiary error.' Id. The court stated: 'If a claim on appeal is nonconstitutional in nature, the burden of establishing that the error was harmful is on the appellant.' " *State* v. *Crocker*, 83 Conn. App. 615, 654, 852 A.2d 762, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004). Because the second prong of *Golding* requires that the claim to be reviewed be of "constitutional magnitude alleging the violation

of a fundamental right"; *State* v. *Golding,* supra, 213 Conn. 239; we conclude that the defendant's claim fails under *Golding* and decline to review it further.[2]

## II

The defendant maintains that the court improperly admitted evidence of the police chase that resulted in Grant's arrest. He argues that it was harmful error for the court to admit that evidence because the prejudice it caused clearly outweighed its probative value. We disagree.

The state sought to introduce evidence regarding the police chase from Bolton to Hartford that ultimately resulted in Grant's arrest. The state argued that the evidence was relevant because it tied the defendant to Grant and the criminal enterprise of the burglaries. The state, outside the presence of the jury, introduced the testimony of Corey as an offer of proof. The defendant objected to the evidence as that of prior misconduct intended to show that he had an "evil disposition" and argued that it did not fall within the common scheme exception to the prohibition against prior misconduct evidence. The court overruled the defendant's objection, ruling that the evidence of other burglaries was probative as to common scheme and intent. The court concluded that the evidence was background information regarding how the defendant came to be implicated in the crimes and was not characterized properly as misconduct evidence.[3] The evidence concerning the police chase was admitted.

---

[2] Even if we were to review the claim, we would affirm the court's ruling. All four elements of *Whelan* were met, and the finding that the statement was inconsistent with Grant's testimony was within the discretion of the court. After a review of the record, we conclude that the court did not abuse its discretion.

[3] The court stated: "Well, I am going to overrule your objection because I see this as basically preliminary, introductory testimony. This really cannot be characterized as misconduct information. It's a foundation. It's the beginning of a story in which this is chapter one. Basically, [i]t ties in the relationship between [the defendant] and Mr. Grant, and it will go from there . . .

At trial, the defendant argued that the evidence of the chase was not relevant to the crimes charged, that it was not admissible as misconduct evidence and that the court prejudicially characterized the incident as a "preparation of a burglary." On appeal, the defendant contends that there was no basis for the court to allow testimony regarding the chase and that its prejudice outweighed its probative value. We disagree.

The evidence was not misconduct evidence because it did not demonstrate that a crime was being committed. "A trial court's ruling on the admissibility of evidence is entitled to great deference and will be overturned only if a clear abuse of the court's discretion is shown and the defendant shows that the ruling caused substantial prejudice or injustice. . . . An appellate tribunal is required to make every reasonable presumption in favor of upholding the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Abernathy*, 72 Conn. App. 831, 851, 806 A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379 (2002).

"Evidence is admissible only if it is relevant. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable." (Internal quotation marks omitted.) *State* v. *Lucky*, 74 Conn. App. 92, 96, 810 A.2d 303 (2002). The evidence in this case was relevant in that it showed how the defendant became a suspect in the burglaries and linked him to Grant. See *State* v. *Vidro*, 71 Conn. App. 89, 95, 800 A.2d 661 (evidence allowed because it showed investigative efforts of police, sequence of events leading to defendant's arrest), cert. denied, 261 Conn. 935, 806 A.2d 1070 (2002).

concerning how the officers eventually arrested Grant and talked to him. And that's the way I see it . . . unfolding."

The defendant argues essentially that the evidence was unnecessary, stating "that the state knew that [it] would be able to establish a connection between the defendant and [Grant] through [Grant's] testimony and his statement of March 16, 2001, which implicated the defendant." Evidence does not have to be absolutely necessary in order to be admissible. Rather, any evidence that is relevant is admissible unless some other rule makes it inadmissible. *State* v. *Izzo*, 82 Conn. App. 285, 290, 843 A.2d 661, cert. denied, 270 Conn. 902, 853 A.2d 521 (2004); see also Conn. Code Evid. § 4-2. "A party is entitled to offer any relevant evidence to aid the trier of fact in its determination, as long as the evidence is not unfairly prejudicial." *State* v. *Izzo*, supra, 290–91. We can find no rule that would make the evidence pertaining to the chase inadmissible.

### III

The defendant argues that the court improperly admitted evidence of the defendant's four other burglary convictions. He contends that the evidence was prejudicial and constituted harmful error because he opted to forgo his constitutional right to testify so as to avoid being impeached with his prior felony convictions. We disagree.

Evidence was admitted regarding the defendant's convictions in the Rocky Hill, Newington, Southington and Plainville burglaries. The police officers who investigated each incident testified about the respective burglaries. At the conclusion of testimony about each burglary, the state and the defendant stipulated that he had pleaded guilty to burglary in the third degree, pursuant to the doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 37–38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970),[4]

---

[4] Pursuant to *North Carolina* v. *Alford*, supra, 400 U.S. 37–38, a criminal defendant may plead guilty to the state's charges without admitting that he committed the crimes in order to take advantage of a plea bargain, and to avoid the risk of conviction and a possibly more severe sentence after a trial.

for the burglaries committed in each respective jurisdiction. The court gave the jury a limiting instruction regarding the use of the evidence and explained that an *Alford* plea was not an admission of the facts, but rather a concession that there was sufficient evidence to obtain a conviction.

As stated in part II, the admission of prior misconduct evidence is a decision within the discretion of the court, and every reasonable presumption will be given in favor of the court's ruling. *State* v. *Holliday*, 85 Conn. App. 242, 249, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004). The evidence must first fit within an exception to the general prohibition against its use, such as to show, "inter alia, intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." (Internal quotation marks omitted.) Id. If the evidence fits within an exception, it is admissible if its probative value outweighs its prejudicial effect. Id.

The defendant does not claim that the evidence describing his participation in the burglaries was inadmissible as prior misconduct evidence. Instead, he argues that the admission of "the actual convictions of these burglaries" was improper and impeached his credibility even though he had opted not to testify. We agree with the state that the defendant incorrectly construes the law governing impeachment evidence. The state did not offer the evidence of the other burglaries to impeach the defendant's credibility. Instead, as the court instructed the jury, it was presented to show a "characteristic method in the commission of criminal acts, the existence of the intent, which is a necessary element of the crimes charged, a motive for the commission of the crimes charged or to corroborate crucial prosecution testimony." As noted by the defen-

dant, the evidence regarding the burglaries was admissible prior misconduct. He has not cited, nor can we find, any authority that precludes mention of prior convictions regarding admissible prior misconduct. In fact, our Supreme Court specifically has held that convictions may be used as admissible prior misconduct evidence. See *State* v. *Mandrell*, 199 Conn. 146, 151, 506 A.2d 100 (1986). Therefore, because evidence of the burglaries was admissible, evidence of the convictions also was admitted properly. We disagree with the defendant that he was prejudiced by the jury's knowledge of his convictions when it already had evidence regarding the specifics of the underlying crimes.

## IV

The defendant contends that the prosecutor committed misconduct.[5] He argues that his due process rights, guaranteed under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, were violated when the prosecutor indicated to the jury that the defendant was incarcerated. The defendant claims that the prosecutor's use of the word "lockup" when questioning Grant about his conversation with the defendant deprived him of a fair trial and nullified the presumption of his innocence. We disagree.

During a brief court recess before Grant was to testify before the jury, the defendant was overheard instructing Grant, while both were in adjoining jail cells, to continue to deny recollection of facts pertaining to the case. A judicial marshal informed the court of that communication outside the presence of the jury. When

[5] The defendant originally brought his claim under *State* v. *Golding*, supra, 213 Conn. 239–40. Our Supreme Court in *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004), which was published after the briefs for this case were filed, held that unpreserved claims of prosecutorial misconduct do not have to fulfill the requirements of *Golding*, but instead must meet the test set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

Grant took the witness stand, the prosecutor inquired about the defendant's influence over Grant's testimony. The prosecutor twice referred to the conversation that took place in the lockup. The court asked the prosecutor to approach the bench. Thereafter, the prosecutor did not mention the defendant's incarceration.

"[C]laims of prosecutorial misconduct trigger a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . . Once the first step is complete and misconduct has been identified, we must apply the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], to determine whether the prosecutorial misconduct was so serious as to amount to a denial of due process . . . . Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Harris*, 85 Conn. App. 637, 641–42, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004).

"Not every reference to a defendant's pretrial incarceration is grounds for a mistrial. . . . There is nothing sacrosanct about a defendant's pretrial incarceration." (Citation omitted; internal quotation marks omitted.) *State* v. *Tucker*, 226 Conn. 618, 628, 629 A.2d 1067 (1993). In this case, the jury knew that the defendant had prior convictions and was on trial for serious crimes. There-

fore, it would not be surprising for the jurors to have knowledge of or suspicions regarding the defendant's incarceration. We cannot conclude that two references to "lockup" were improper.

Additionally, even if we assume that the remarks were improper, the defendant's claim could not meet the *Williams* test. The "misconduct" could not be considered severe, it was infrequent, and the court gave the jury instructions, both before and after the presentation of evidence, on the presumption of innocence and the state's burden of proof. We reject the defendant's contention that the prosecutor's remarks nullified the presumption of innocence and prejudiced the defendant enough to warrant reversal of the judgments.

The judgments are affirmed.

In this opinion the other judges concurred.