STATE OF CONNECTICUT *v.* WILLIAM MCCLEESE
(AC 26289)

Bishop, McLachlan and Dupont, Js.

Argued January 13—officially released March 21, 2006

*Suzanne Zitser*, assistant public defender, with whom, on the brief, were *E. Paul Haringa*, former assistant public defender, and *Richard Emanuel*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger S. Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, William McCleese, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a), and assault in the first degree in violation of General Statutes § 53a-59 (a) (5). On appeal, the defendant claims

that (1) the trial court abused its discretion when it denied his motion for a mistrial and (2) he was denied a fair trial as a result of prosecutorial misconduct during closing arguments to the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of January 7, 2001, the defendant and his half brother, Anthony Johnson, ambushed and murdered Daniel Moorer as he was engaged in a conversation with his friends, James Ford and Steven Godfrey, in front of the apartment of Moorer's father on Munson Street in New Haven.

The defendant conspired to murder Moorer the evening before, on January 6, 2001, with Johnson and his cousin, Jermaine Mitchell, because the defendant believed that Moorer was "messing with" Johnson. The day of the murder, Mitchell drove the defendant and Johnson to Munson Street. As they drove along Munson Street, the defendant and Johnson saw the victim, and then drove to a parking lot located behind the housing complex and parked. The defendant gave Johnson a .45 caliber semiautomatic handgun and armed himself with a .38 caliber revolver. While Mitchell remained in the car, the two men proceeded toward Munson Street and opened fire on Moorer, hitting him several times as he tried to run away. When Moorer collapsed on the sidewalk, the defendant and Johnson continued shooting him, hitting him multiple times. One of the gunshots fired by Johnson grazed the cheek of Ford, causing Ford to take cover across the street. After firing seven gunshots into Moorer's body, the defendant and Johnson ran from the scene. Additional facts will be set forth as necessary.

I

First, the defendant claims that the court abused its discretion when it denied the defendant's motion for a

mistrial. Specifically, the defendant claims that the state's inadvertent reference to his incarceration, in the presence of the jury during trial, was so prejudicial as to constitute a ground for a mistrial and that the court's decision to give a curative instruction only highlighted the prejudicial information. We are not persuaded.

The following additional facts are pertinent to our discussion of the defendant's claim. At trial, after Johnson had testified against the defendant, implicating him in the murder of Moorer, the defense called Erica Green to impeach the testimony of Johnson. Green testified that she had spoken to Johnson recently "about him getting on the [witness] stand and lying against his brother." On cross-examination, the state sought to establish that Green was a biased witness because she knew the defendant and his family. During questioning, the state asked Green if the defendant had called her from jail and whether the defendant was able to place telephone calls from jail.[1] The defense objected to the state's reference to the defendant's incarceration and moved for a mistrial.

The court denied the defendant's motion for a mistrial, holding that it did not find that the reference to the defendant's incarceration rose to the level of substantial prejudice or that it could not be remedied with a cura-

---

[1] The following colloquy between the prosecutor and Green, which was the subject of the defendant's motion for a mistrial, ensued:

"Q. Did you speak to the defendant, Mr. McCleese, since last Thursday?

"A. Yes. . . .

"Q. Was it at the jail? Was it over the telephone?

"A. Since last Thursday?

"Q. Yes.

"A. Over the phone.

"Q. And did you call him or did he call you?

"A. He called me.

"Q. Was it through a third party that the call was made?

"A. No.

"Q. He can call you directly from the jail?

"A. Yes."

tive instruction. Defense counsel asked that the court not give a curative instruction because he believed it would highlight the testimonial exchange. The court disagreed and assured defense counsel that the curative instruction would not "suggest that he is currently in jail." The court then gave the curative instruction, over defense counsel's objection.[2]

As we have stated, "[t]he decision whether to grant a mistrial is within the sound discretion of the trial court. . . . [O]n appeal, the defendant bears the burden of establishing that there was irreparable prejudice to the defendant's case such that it denied him a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 87 Conn. App. 93, 99, 864 A.2d 869 (2004), cert. denied, 273 Conn. 919, 871 A.2d 371 (2005). "While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) Id. "Where the misconduct occurs and the trial judge, as a minister of justice, intervenes in a timely way and gives a proper curative instruction, the problem is cured." *State* v. *Fauci*, 87 Conn. App. 150, 176 n.2, 865 A.2d 1191, cert. granted on other grounds, 273 Conn. 921, 871 A.2d 1029 (2005). "Our jurisprudence is clear . . . that unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Boscarino*, 86 Conn. App. 447, 460, 861 A.2d 579 (2004).

---

[2] The court stated in relevant part: "Whether [the defendant] was ever in jail, whether or not he is currently in jail, is a factor that you are absolutely forbidden to consider at all during your assessment of the evidence in this case and during the findings of facts in connection with this case."

Our review of the record satisfies us that the court's immediate curative instruction obviated any prejudice that may have been created by the state's reference to the defendant's incarceration. We reject the defendant's argument that the reference to the defendant's incarceration was so prejudicial that it could not be cured by the instruction and that the instruction worked only to highlight it. "Not every reference to a defendant's pretrial incarceration is grounds for a mistrial. . . . There is nothing sacrosanct about a defendant's pretrial incarceration." (Internal quotation marks omitted.) *State* v. *Marshall*, 87 Conn. App. 592, 604, 867 A.2d 57, cert. denied, 273 Conn. 925, 871 A.2d 1032 (2005).

In *Marshall*, we observed that where the "jury knew that the defendant had prior convictions and was on trial for serious crimes . . . it would not be surprising for the jurors to have knowledge of or suspicions regarding the defendant's incarceration." Id., 604–605. Accordingly, we held that the prosecution's two references to "lockup" did not deprive the defendant of a fair trial. Id., 605. Here, the defendant was on trial for murder, conspiracy to commit murder and assault. It is reasonable to believe that the jury could have suspected that the defendant, at some point before trial, had been incarcerated. In this instance, we believe the court's curative instruction was an adequate response to the state's inadvertent question regarding the defendant's pretrial incarceration.

II

Next, the defendant claims that the state committed prosecutorial misconduct during its closing argument to the jury. Specifically, the defendant claims that the prosecutor committed misconduct when, during closing argument, he (1) mischaracterized and denigrated the defendant's closing argument, (2) improperly vouched for the credibility of the state's witnesses and

(3) referred to facts that were not in evidence. Although the defendant did not object to any of the alleged misconduct challenged on appeal, he maintains that he is entitled to a new trial on the ground that the alleged misconduct deprived him of a fair trial. We disagree.

We begin by setting forth the applicable standard of review. We review unpreserved claims of prosecutorial misconduct by applying the factors set out in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). *State* v. *Serrano*, 91 Conn. App. 227, 231, 880 A.2d 183, cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005). "[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) Id.

"Only if we conclude that prosecutorial misconduct has occurred do we then determine whether the defendant was deprived of his due process right to a fair trial. In doing so, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial misconduct, therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties. . . . This inquiry is guided by an examination of the following *Williams* factors: the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the

misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Schiavo*, 93 Conn. App. 290, 302, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006).

## A

First, the defendant claims that the prosecutor committed misconduct by mischaracterizing and denigrating his closing argument by making references to the movie, "The Wizard of Oz," and to "ruby red slippers." We disagree.

During closing arguments, defense counsel began his argument by stating: "[T]his morning, as I was getting up, I was engaging in one of the fantasies trial lawyers often engage in. . . . [W]hat would it be like to be in the jury deliberation room on a trial we tried or some other trial? . . . I'd like to share with you some of my thoughts I had during my fantasy about being in the jury deliberation box throughout this trial."

On rebuttal, the prosecutor responded to opposing counsel's remarks by stating the following: "[L]et's for just a moment leave the fantasy world and come back to reality. Now, I'm wearing black loafers today; they're not ruby red slippers, but I'm going to click my—my heels together and say, there's no place like court. There's no place like court. There's no place like court, and we're not in fantasy land; we're in court."

"It is improper for a prosecutor to denigrate the function of defense counsel. . . . [T]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel. . . . Closing arguments of counsel, however, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. . . .

[S]ome leeway must be afforded to the advocates in offering arguments to the jury in final argument. . . . [C]ounsel must be allowed a generous latitude in argument . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Nixon*, 91 Conn. App. 333, 338–39, 880 A.2d 199, cert. denied, 276 Conn. 911, 886 A.2d 426 (2005).

Our review of the transcript of the closing arguments convinces us that the prosecutor's references to "The Wizard of Oz" and to "ruby red slippers," having been in response to defense counsel's statement regarding the "thoughts [that defense counsel] had during [his] fantasy," were not improper. See *State* v. *Nixon*, supra, 91 Conn. App. 338–39. Rather, we hold that the state's rhetorical comments were fair argument. See id.

### B

Next, the defendant claims that the prosecutor improperly vouched for the credibility of the state's witnesses during closing argument. We are unpersuaded.

During the state's rebuttal of the defendant's closing argument, regarding claimed inconsistencies in the testimony of several of the state's witnesses, the prosecutor stated: "I don't have a busload of priests, ministers and rabbis who are out for a Sunday drive that day who could come in here and who you might find more believable. I brought before you the witnesses that we have. Counsel suggested . . . some of their testimony was tainted because they met with the state's attorney's office, but wouldn't I be a fool not to talk to those people before I put them on the [witness] stand? He's suggesting that because I met with them that their testimony is tainted. I don't have a busload of clergy; I have what I have, and I brought you what I brought you. . . . If each and every one of the state's witnesses . . . came before you and told exactly the same story,

exactly the same way, shape and form, then I would submit to you that you would have something to be suspicious about."

Although "[t]he prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses . . . [i]t does not follow . . . that every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . We must give the jur[ors] the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citations omitted; internal quotation marks omitted.) *State* v. *Mulero*, 91 Conn. App. 509, 519–20, 881 A.2d 1039 (2005), cert. denied, 277 Conn. 912, 895 A.2d 792 (2006).

The record reflects that the prosecutor's reference to clergy, priests, ministers and rabbis was a rhetorical device used to acknowledge that the state's witnesses were fallible. The prosecutor did not vouch for the witnesses' credibility, but rather attempted to persuade the jurors to draw inferences in the state's favor on the basis of the totality of the evidence in the record. That comment did not constitute misconduct.

C

Finally, the defendant claims that the prosecutor improperly referred to facts that were not in evidence and deprived him of a fair trial. We agree that the reference was improper, but disagree that it deprived the defendant of a fair trial.

At trial, Johnson first implicated the defendant in the murder of Moorer and then recanted his statement,

stating that the police had forced him to testify against the defendant through threats and intimidation. During closing arguments, the prosecutor remarked on Johnson's allegations by stating that the police did not need to pressure Johnson for a statement implicating the defendant in the murder because "Johnson was already under arrest and charged . . . . [A] judge had found probable cause and issued a warrant for [Johnson's] arrest." The defendant claims that the prosecutor's reference to the finding of probable cause by the judge and the arrest warrant were improper because those facts were not in evidence. We agree.

"While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider." (Internal quotation marks omitted.) *State* v. *Rivera*, 84 Conn. App. 245, 260, 853 A.2d 554, cert. denied, 271 Conn. 934, 861 A.2d 511 (2004). Because the court's finding of probable cause and Johnson's arrest warrant were not admitted into evidence, the prosecutor's reference to them was improper.

Having concluded that the prosecutor's reference was improper, we next must determine whether the defendant was deprived of his due process right to a fair trial. As we have stated, our inquiry into whether the defendant has been prejudiced by prosecutorial misconduct "is guided by an examination of the *Williams* factors: the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's

case." (Internal quotation marks omitted.) *State* v. *Schiavo*, supra, 93 Conn. App. 302.

In this instance, the defendant was not prejudiced by the prosecutor's improper reference to facts that were not in evidence. In arriving at this conclusion, we note that the misconduct was infrequent, as it only occurred once during the proceedings, that the issue of Johnson's arrest warrant was not a critical issue in the case because Johnson was not a codefendant and that the state's case against the defendant was compelling.[3] Additionally, the record reflects that the defendant did not object to the prosecutor's reference. As our Supreme Court has noted, "[w]hen defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 744, 888 A.2d 985 (2006). Accordingly, the defendant has failed to satisfy his burden of showing that the prosecutor's reference to facts that were not in evidence deprived him of his opportunity for a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Numerous eyewitnesses identified the defendant as one of the assailants.