STATE OF CONNECTICUT *v.* STEVEN NECAISE
(AC 24898)

Gruendel, Lavine and Hennessy, Js.

Argued May 25—officially released August 22, 2006

*John M. Barton III*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Steven Necaise, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and the subsequent revocation of his probation pursuant to General Statutes § 53a-32. On appeal, the defendant now claims that he was denied his due process rights because (1) the circumstances of the victim's out-of-court identification of the defendant were unduly suggestive, (2) the court failed to address potential juror bias adequately and (3) the prosecutor committed misconduct during closing argument.[1] We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On September 14, 2001, at approximately 6:30 p.m., the victim, Samuel Rosa, was driving in the right lane of State Street Extension in Bridgeport and stopped at the intersection with Dewey Street. While the victim's vehicle was stopped at the intersection, the defendant drove his white Lexus next to the victim's vehicle in the left lane of State Street Extension. As the victim began to turn right onto Dewey Street, the defendant also turned right onto Dewey Street, thereby cutting in front of the victim and blocking his way. Both cars then came to a stop, and the two men exited their vehicles. The two men began to argue and engaged in a physical

---

[1] The defendant also claims that if his conviction is reversed or vacated, or if a new trial is granted, the findings of violation of probation must also be vacated. Because we affirm the judgments of the trial court, we need not reach this claim.

altercation. At one point, the two men separated, and the victim turned his back to the defendant, who then struck him from behind. The two men then resumed fighting, and the defendant pulled a knife from his back pocket and slashed the victim across the face. After slashing the victim, the defendant returned to his vehicle and fled the scene.

Following an investigation by the Bridgeport police department, the state charged the defendant in a substitute information with assault in the first degree in violation of § 53a-59 (a) (1). On April 24, 2003, the jury found the defendant guilty of this offense. On the basis of this incident, the defendant also was charged with two counts of violation of probation in contravention of § 53a-32. On April 30, 2003, the court found that the defendant had violated the conditions of his probation and revoked both probations.[2] On July 16, 2003, the court imposed on the defendant a total effective sentence of twenty years incarceration followed by five years of special parole.[3] This appeal followed.

I

The defendant first claims that the court should have suppressed the victim's out-of-court identifications of the defendant because the procedures employed by the police were unduly suggestive and violative of his constitutional rights. We conclude that this claim cannot be reviewed on appeal.

[2] Each violation of probation was based on a separate criminal conviction. Each violation also stemmed from the condition of probation that the defendant "not violate any laws of the United States, this state, or any other state or territory" and the condition that he not possess any narcotics, drugs or weapons.

[3] The court sentenced the defendant to ten years incarceration, followed by five years of special parole, for the assault conviction, two and one-half years to serve consecutively for one violation of probation, and seven and one-half years to serve consecutively for the other violation of probation.

The following additional facts are necessary to our resolution of the defendant's claim. The victim made two out-of-court identifications of the defendant. The first identification was made on September 14, 2001, shortly after the incident occurred. That night, Juan R. Gonzalez, a detective with the Bridgeport police department, went to the hospital where the victim was being treated. Gonzalez testified that he showed the victim a photograph of the defendant, and the victim identified the defendant as the person who had been involved in the incident. At that time, Gonzalez was unable to take a statement from the victim because he was being prepared for surgery and already had been administered a sedative. The victim, however, testified that he had no recollection of being shown any photographs on the night of the incident.

The second identification was made on October 9, 2001. At that time, Gonzalez interviewed the victim, who gave him a description of his assailant. Gonzalez then showed the victim an eight person photographic array. From this array, the victim identified the defendant as the assailant.[4] On October 16, 2001, Gonzalez again interviewed the victim, who affirmed his identification from the photographic array and stated that he recognized the defendant as the person who assaulted him.

The defendant acknowledges that he did not raise at trial the issue of whether the identification procedures employed by the police violated his due process rights. Accordingly, he now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following

---

[4] We note that when the state first introduced the October 9, 2001 identification, the defendant made no objection. When it was subsequently offered by the state as a full exhibit, the court inquired of the defendant's counsel, who stated, "I have no objection. Thank you."

conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. . . . The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim. . . .

"In determining whether a pretrial identification procedure violated a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail in his claim the defendant must demonstrate that the trial court erred in both of its determinations regarding suggestiveness and reliability of identifications in the totality of the circumstances. . . .

"Resolution of these questions requires the fact-finding function of the trial court. The totality of circumstances, by necessity, requires the determination of a number of factors used to test the reliability of the out-of-court identification. . . . Without the necessary factual and legal conclusions [on reliability] furnished

by the trial court, we would be left to speculate." (Citations omitted; internal quotation marks omitted.) *State v. Ortiz*, 47 Conn. App. 333, 341–42, 705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175 (1998).

In this case, no motion to suppress was filed or made at trial, no objection was made to the introduction of the photographic array as an exhibit and no evidentiary hearing was held regarding the identification evidence at issue.[5] Consequently, the court did not make any factual findings or legal conclusions concerning the suggestiveness of the procedures employed or the reliability of the identifications in this particular case. These findings are essential to our resolution of this claim, particularly in this case where the testimony of the victim and Gonzalez are inconsistent. Accordingly, we will not review the defendant's claim because the record is inadequate and, therefore, the claim fails under the first prong of *Golding*.[6] See id., 343; see also *State v. Morgan*, 274 Conn. 790, 794 n.5, 877 A.2d 739 (2005).

## II

The defendant next contends that the court did not take sufficient action after receiving a note from a juror

---

[5] We note that the defendant made a motion for a judgment of acquittal at the conclusion of the state's evidence and referenced, inter alia, the suggestiveness and unreliability of the identifications. The court denied the motion but did not make any factual findings or legal conclusions as to the identifications.

[6] We further note that it was the defendant, not the state, who first referred to the in-hospital attempt at identification during cross-examination of the victim. The state subsequently elicited further testimony about that identification. The defendant, therefore, cannot now claim that evidence of this identification should have been suppressed.

"It is well established that a party who induces an error cannot be heard to later complain about that error. . . . [T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal. . . . In *State v. Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004), our Supreme Court held that review of induced, unpreserved error is not permissible under [*Golding*]." (Internal quotation marks omitted.) *State v. Felder*, 95 Conn. App. 248, 256, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006).

suggesting possible bias. Specifically, he claims that the court improperly failed to hold a hearing to determine the meaning of the note and failed to grant his motion for a mistrial, and, therefore, his constitutional rights were violated. We are not persuaded.

The following additional facts are necessary to our resolution of the defendant's claims. During closing argument, counsel for the defendant stated: "So, we have [the victim], who, after a month, and no doubt—I don't know—I know that at least one of you had suffered a pretty significant injury in the past—but you can—I'm sure that you can identify with [the victim] . . . in revisiting that traumatic event over a period of time, and so that month he revisited and revisited and revisited." After counsel for the defendant finished his closing argument, but before the prosecutor made his rebuttal closing argument, the court went into recess. During the recess, the court received a note from a juror, stating, "I had been hurt and in closing statement he used that to determine *my* verdict." (Emphasis in original.) Thereafter, the court held a hearing with both parties. At that time, the prosecutor requested that the court give a curative instruction whereas the defendant requested that the court grant a mistrial. The court then informed the parties that it would give a curative instruction. Immediately after the jury was seated, the court gave the curative instruction,[7] and the trial continued without further reference to the note or the impartiality of the jury.[8]

---

[7] The court's instruction was as follows: "Please remember that the arguments of counsel are not evidence. Your decision will be based solely on the evidence presented in this courtroom in this case, and the facts as you find them to be and applying those facts to the law.

"Further, any examples are not meant to apply to any part of any particular person or persons. There should be no prejudice or sympathy toward the state or the defense because of any objections, continuances, these final arguments of counsel or any other aspect of the trial."

[8] Although the court did not specifically rule on the defendant's motion for a mistrial, we are satisfied that in giving the curative instruction and proceeding with the remainder of the trial, the court implicitly denied the

Before addressing the merits of the defendant's claims, we set forth the legal principles governing challenges to the court's response to the note. "Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution [of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution] . . . . [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . It is well established, however, that not every incident of juror misconduct requires a new trial. . . . [D]ue process seeks to assure a defendant a fair trial, not a perfect one. . . . The question is whether . . . the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . The defendant has been prejudiced if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror. . . .

"To ensure that the jury will decide the case free from external influences that might interfere with the exercise of deliberate and unbiased judgment [we previously have held, pursuant to our supervisory authority over the administration of justice, that] a trial court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information tending to indicate the possibility of juror misconduct or partiality. . . .

"Th[e] form and scope [of that preliminary inquiry] may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on

defendant's motion. See *Elliott* v. *Larson*, 81 Conn. App. 468, 471 n.2, 840 A.2d 59 (2004).

what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto. . . . [Our Supreme Court] previously [has] instructed that the trial court should consider the following factors in exercising its discretion as to the form and scope of a preliminary inquiry into allegations of jur[or] misconduct: (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury, which will vary with the seriousness and the credibility of the allegations of jur[or] misconduct; and (3) the state's interests of, inter alia, jur[or] impartiality, protecting jurors' privacy and maintaining public confidence in the jury system. . . .

"Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations of jur[or] [bias or] misconduct will necessarily be fact specific. No one factor is determinative as to the proper form and scope of a proceeding. It is the trial court that must, in the exercise of its discretion, weigh the relevant factors and determine the proper balance between them. . . . Consequently, the trial court has wide latitude in fashioning the proper response to allegations of juror bias. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged jur[or] misconduct can fairly be characterized as an abuse of its discretion. . . .

Finally, in cases [in which] the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. . . . [When], however, the trial court was in no way responsible for the juror misconduct . . . we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that

actual prejudice resulted from that misconduct." (Citations omitted; internal quotation marks omitted.) *State v. West,* 274 Conn. 605, 647–49, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).[9]

The defendant first claims that the court's response to the juror's note was insufficient. Here, it is clear that the court responded appropriately by conducting a preliminary inquiry of counsel, on the record, about the note it had received from the juror during the recess. At that time, each party was given the opportunity to assess the nature of the potential prejudice and to propose possible remedial actions, including requesting further inquiry by the court of the juror who had written the note. We therefore must examine whether the court's response was an abuse of its discretion.

"In [*State v. Brown,* 235 Conn. 502, 528, 668 A.2d 1288 (1995)], the Supreme Court stated that [t]here may well be cases, therefore, in which the trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record, that such allegations lack any merit. In such cases, a defendant's constitutional rights may not be violated by the trial court's failure to hold an evidentiary hearing, in the absence of a timely request by counsel." (Internal quotation marks omitted.) *State v. Bangulescu,* 80 Conn. App. 26, 51, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d 1171 (2003). Here, it is not clear from the juror's note if she had made up her mind about the verdict or only if she felt as though the defendant was trying to use knowledge of her prior injury to determine her verdict in this case. Moreover,

---

[9] We characterize the referenced juror conduct as "juror misconduct" and apply the corresponding law because that is how the parties have briefed and argued the claim. We note, however, that the juror's conduct does not fit into the classic understanding of behavior constituting juror misconduct.

the defendant did not request further inquiry to determine whether the juror had in fact already made up her mind. "[T]o succeed on a claim of bias the defendant must raise his contention from the realm of speculation to the realm of fact." (Internal quotation marks omitted.) *O'Briskie* v. *Berry*, 95 Conn. App. 300, 306–307, 897 A.2d 605 (2006). We therefore conclude that this case is one of those in which the failure to hold an evidentiary hearing does not violate the defendant's constitutional rights. See *State* v. *Bangulescu*, supra, 51 (court did not abuse discretion when it conducted cursory inquiry of counsel and defendant failed to seek additional questioning or investigation by court despite opportunity to do so).

The defendant also claims that the court improperly denied his motion for a mistrial. "[T]he decision whether to grant a mistrial is within the sound discretion of the trial court. . . . [O]n appeal, the defendant bears the burden of establishing that there was irreparable prejudice to the defendant's case such that it denied him a fair trial. . . . While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Citation omitted; internal quotation marks omitted.) *State* v. *McCleese*, 94 Conn. App. 510, 514, 892 A.2d 343, cert. denied, 278 Conn. 908, 899 A.2d 36 (2006). Here, the court gave a curative instruction reminding the jury of its duty to decide the case on the evidence presented. "[I]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 404,

897 A.2d 569 (2006). In light of the nature of the juror's conduct and the curative instruction given, the court did not abuse its discretion in its response to the note from the juror.[10]

### III

The defendant's final claim is that the prosecutor committed misconduct during closing argument by attempting to mislead the jury into giving greater credence to an eyewitness' identification of the defendant. The defendant claims, as a result of this claimed impropriety, that his due process rights were violated, and, therefore, he is entitled to a new trial. We are not persuaded.

The following additional facts are necessary to our resolution of the defendant's claim. Thomas Moore was driving on State Street at the time of the incident at issue and witnessed the altercation between the two men. That evening, after the incident, Moore went to the police station and was shown a photographic array. In court, Moore identified the defendant as one of the men who was involved in the altercation. He further testified on direct examination that he had been able to make an identification from the photographic array.[11]

---

[10] Were the defendant to have successfully demonstrated that the court abused its discretion in fashioning a response to the alleged juror bias, we note that he could not succeed in demonstrating actual prejudice. The strength of the state's case militates against such a conclusion. The crux of the defendant's case was that he was not the assailant. The state's case included identification evidence from both an eyewitness and the victim, as well as circumstantial evidence of identity, such as the presence of the defendant's checkbook at the scene of the incident. Accordingly, the defendant's claim must fail.

[11] The colloquy on direct examination between the prosecutor and Moore was as follows:

"[The Prosecutor]: Now, at some earlier time . . . did the police show you some photographs?

"[The Witness]: When I returned to the—to the police station that evening, yes.

"[The Prosecutor]: And were you able to identify anybody at that time from the photographs?

On cross-examination, Moore stated that although he was not able to make a positive identification, he identified the photograph of the man who looked most like the assailant.[12]

The defendant directs our attention to two statements made by the prosecutor during closing argument, which he claims were used to bolster the credibility of the identification evidence, as the state's case in that regard,

"[The Witness]: Uh, there was an older photograph that resembled—

"[Defense Counsel]: Objection. Nonresponsive.

"[The Witness]: —the def—

"[The Prosecutor]: Just, were you able to make an identification?

"[The Witness]: Sure. Yes."

[12] The colloquy on cross-examination between defense counsel and Moore was as follows:

"[Defense Counsel]: It's your testimony that you identified somebody from a photo array? Made a positive identification from a photo array on the night of the incident.

"[The Witness]: I'm unsure as to how you're asking your question. Like, was I shown, like, a lineup and said, oh, that's him?

"[Defense Counsel]: Yeah.

"[The Witness]: Uh, they showed me a number of photographs, and they said do you know if any of these would look like the assailant, and I said that would be it right there, and I pointed to the one that most looked like—

"[Defense Counsel]: Looked like, but you didn't make a positive identification that was the assailant; right?

"[The Witness]: Correct.

\* \* \*

"[Defense Counsel]: Now, did you—on the night of the incident you were shown a series of photographs; right?

"[The Witness]: Correct.

"[Defense Counsel]: And among them, you couldn't make a positive identification, although at least one of them looked somewhat like the assailant. Is that where we stand here?

"[The Witness]: Yeah.

"[Defense Counsel]: Okay. Now, other than that effort to identify the assailant, okay, you were never privy to a lineup of—including [the defendant]—

"[The Witness]: No.

"[Defense Counsel]: —and a series of people who look like him; right?

"[The Witness]: No.

"[Defense Counsel]: So, the identification that you're making today, would you say, is partially skewed by the fact that he sits here at the defense table?

"[The Witness]: Sure."

he alleges, was weak. The defendant concedes that he did not object to these statements at trial, but nonetheless seeks our review on appeal.

We begin by stating our standard of review. Our Supreme Court has "recently stated that a defendant who fails to preserve claims of prosecutorial misconduct need not seek to prevail under the specific requirements of [*Golding*], and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. . . . The reason for this is that the defendant in a claim of prosecutorial misconduct must establish that the prosecutorial misconduct was so serious as to amount to a denial of due process . . . . In evaluating whether the misconduct rose to this level, we consider the factors enumerated by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . These factors include the extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case. . . . The consideration of the fairness of the entire trial through the *Williams* factors duplicates, and, thus makes superfluous, a separate application of the *Golding* test. . . .

"This does not mean, however, that the absence of an objection at trial does not play a significant role in the application of the *Williams* factors. To the contrary, the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . [Thus], the fact that defense counsel did not object to

one or more incidents of misconduct must be considered in determining whether and to what extent the misconduct contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted. . . .

"[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . . As we have indicated, our determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, supra, 204 Conn. 540, with due consideration of whether that misconduct was objected to at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Warholic*, supra, 278 Conn. 360–62.

As the alleged misconduct occurred during closing argument, we set forth the applicable legal principles. "[P]rosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments." (Internal quotation marks omitted.) *State* v. *Jackson*, 95 Conn. App. 400, 419, 896 A.2d 137, cert. denied, 279 Conn. 904, 901 A.2d 1226 (2006). "[B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's

case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Mulero*, 91 Conn. App. 509, 517, 891 A.2d 1039 (2005), cert. denied, 277 Conn. 912, 895 A.2d 792 (2006).

Before turning to the specific instances of alleged misconduct, we address a common theme running throughout the defendant's claim. The defendant contends that "[b]y grouping Moore's in-court identification with [the victim's] out-of-court identifications and failing to qualify Moore's identification as an in-court identification only, the state was attempting to mislead the jury into giving greater credence to Moore's identification of the defendant as the assailant." We must review the comments complained of in the context of the entire trial. See *State* v. *Schiavo*, 93 Conn. App. 290, 304, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006). Here, the prosecutor acknowledged during closing argument that Moore's identification was in-court only. Specifically, the prosecutor stated, "Well, how do we know it was the defendant? We had the eyewitness testimony of [the victim]. We had the eyewitness testimony of [Moore], who picked him out here, albeit, [Moore] didn't pick him out of the photograph at the time. Uh, we don't have the photograph that [Moore] saw, but he didn't pick him out in the photograph. *He did pick him out here in court live and in person.*" (Emphasis added.) Later, during rebuttal closing argument, the prosecutor stated: "And that's where you can find credibility as to that *in-court* identification on the part of [the victim] and on the part of [Moore] because of the nature of the events." (Emphasis added.) In the context of the entire trial, the defendant's contention is therefore incorrect.

We now turn to the first comment to which the defendant directs our attention, which was made by the prosecutor during his initial closing argument while discussing reasonable inferences that may be drawn

from the evidence to identify the defendant as the assailant. Specifically, after addressing other evidence found at the scene of the incident at issue, the prosecutor stated that "[t]hat's how you get proof of identity. You have the eyewitness testimony, the eyewitness testimony of the victim and the eyewitness testimony of [Moore]." Here, it is clear that the state presented eyewitness testimony of both the victim and Moore. It is also clear that both Moore and the victim made some sort of identification of the defendant, which the prosecutor clearly described. When placed in the context of the entire trial, in which the defendant attempted to discredit the state's identification evidence, the prosecutor was entitled to respond to that argument by attempting to persuade the jury to draw inferences in the state's favor from the evidence adduced at trial. See *State* v. *Blackwell*, 86 Conn. App. 409, 424–25, 861 A.2d 548 (2004) (prosecutor's comment to jury on legal propriety of identification from photographic array proper after defendant made argument that jury should not put any weight on that identification), cert. denied, 272 Conn. 922, 867 A.2d 838 (2005). The prosecutor, therefore, did not commit misconduct in this instance.

The second comment that the defendant references was made by the prosecutor during rebuttal closing argument. Specifically, while discussing the identification evidence, the prosecutor stated that "a great Connecticut playwright, Eugene O'Neill, once said . . . '[w]hat beastly incidents our memories insist on cherishing. The ugly and disgusting, the beautiful things we have to keep diaries to remember.'[13] This is a nice thought to access the credibility of the [identification] issue with respect to [the victim] and [Moore]. What gets more deeply burned into the memory? The bad things." "[I]t does not follow . . . that every use of

[13] The character Charles Marsden delivers this line in act two of O'Neill's play, "Strange Interlude," written in 1928.

rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *McCleese*, supra, 94 Conn. App. 519. Moreover, "[i]t is permissible . . . for the prosecutor to argue to the jury that the evidence and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses. . . . It is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record." (Internal quotation marks omitted.) *State* v. *Sargent*, 87 Conn. App. 24, 36, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). Here, as already discussed, the prosecutor's remarks were based on the evidence adduced at trial, and did not exceed the bounds of propriety as to commenting on credibility and were therefore not improper.[14]

The judgments are affirmed.

In this opinion the other judges concurred.

---

[14] Because we conclude that the prosecutor did not engage in misconduct, we need not reach the second prong of the inquiry, which is whether the defendant was harmed by the alleged misconduct.