STATE OF CONNECTICUT *v.* ROBERT NIXON
(AC 24842)

DiPentima, Harper and Mihalakos, Js.

Argued April 29—officially released September 13, 2005

*William B. Westcott*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey M. Haupt*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Robert Nixon, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On appeal, the defendant claims that the prosecutor engaged in a pat-

tern of misconduct that resulted in a denial of the defendant's due process right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 15, 2002, the victim, Barbara Maloney, and her friend, Shanda Barrett, visited a variety of establishments in New Haven. After consuming three or four drinks, Maloney asked Barrett to drive her truck. As Barrett drove on Sherman Avenue in New Haven, Maloney noticed a car belonging to her friend, Claudia DiSorbo, parked in front of 126 Sherman Avenue, the defendant's residence. Barrett parked the truck and the two women approached DiSorbo's car. DiSorbo was sitting in the driver's seat, and the defendant was in the passenger seat.

After Maloney engaged DiSorbo and the defendant in conversation, the defendant exited the vehicle and spoke with Maloney at the front of the car. At trial, several witnesses testified that Maloney and the defendant discussed an argument between Maloney and the defendant's mother. At some point during the discussion, Maloney and the defendant walked toward the defendant's house.

As they were ascending the stairs to the porch, the defendant grabbed Maloney's arm and a fight ensued. During the altercation, the defendant swung his hand toward Maloney's jaw. Maloney testified that she did not see a knife or weapon and, at first, thought the defendant had punched or slapped her. When Maloney moved her hand to her jawbone, however, she noticed it was smeared with blood. Several witnesses testified that they heard a slap; however, testimony regarding whether they saw the defendant with a weapon was inconsistent. Barrett testified that when the defendant's hand moved toward the victim's jaw, he was holding some sort of "hook." DiSorbo testified that she did not

see the defendant with a knife but that his finger was cut after the argument.

When Maloney noticed that she was cut, she began yelling at the defendant. Barrett helped Maloney into the truck and drove her to a local hospital. At the hospital, Maloney received fifty stitches for a three to four inch cut right along her jawbone and down the left side of her neck.

On May 16, 2002, the morning after the incident, the police received a call from a maintenance worker who discovered a three to four inch knife with blood on its blade at 136 Sherman Avenue, close to the location of the incident. The defendant was arrested on May 16, 2002, and charged with assault in the first degree. On August 1, 2003, the jury found the defendant guilty. Shortly thereafter, on October 17, 2003, the defendant was sentenced to fifteen years of incarceration and five years of special probation. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant contends that the prosecutor engaged in a pattern of misconduct. Specifically, the defendant maintains that during closing arguments, the prosecutor improperly criticized the function of defense counsel and referred to facts that were not in evidence. The defendant objected to all of the improper remarks during closing arguments. Nevertheless, the defendant contends that despite the fact that the court sustained several of his objections and issued curative instructions, as a result of the prosecutor's remarks, he was prejudiced. We disagree.

"We must first set forth the applicable standard of review. [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial miscon-

duct] we must view the prosecutor's comments in the context of the entire trial. . . . In other words, [i]t is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole." (Citation omitted; internal quotation marks omitted.) *State* v. *Rupar*, 86 Conn. App. 641, 644–45, 862 A.2d 352 (2004), cert. denied, 273 Conn. 919, 871 A.2d 1030 (2005).

"[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d 977 (2003).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme] [C]ourt, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). "[A] reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial."

*State* v. *Stevenson,* 269 Conn. 563, 573, 849 A.2d 626 (2004).

I

The defendant groups his claims into two categories.[1] We will begin our determination as to whether the prosecutor committed misconduct with the defendant's claim that the prosecutor undermined the role of defense counsel. The following additional facts are relevant to our analysis.

The prosecutor, during the opening portion of his closing argument, stated that "[t]he defendant will most likely try to distract you from the big picture . . . ." The defendant objected and requested a curative instruction from the court. The court issued a curative instruction, explaining to the jury that "[t]he law does not require the defendant to prove anything. It's the state's burden of proof, and you must be reminded of that. It's not the defense job to distract; it's their job to marshal the evidence in front of you that they think is appropriate as well."

"It is improper for a prosecutor to denigrate the function of defense counsel. . . . [T]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel." (Citation omitted; internal quotation marks

---

[1] The state maintains that "[t]he defendant's claim that the prosecutor committed various improprieties during closing argument should not be reviewed because it lacks substantive briefing." This court is "not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Colon,* 272 Conn. 106, 153 n.19, 864 A.2d 666 (2004). Although the majority of the defendant's brief is dedicated to laying out the facts of the case and highlighting the alleged instances of misconduct, the defendant does provide some analysis of his prosecutorial misconduct claims. We therefore conclude that the defendant's brief is adequate for our review.

omitted.) *State* v. *Holliday*, 85 Conn. App. 242, 263, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004). "Closing arguments of counsel, however, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. . . . [S]ome leeway must be afforded to the advocates in offering arguments to the jury in final argument. . . . [C]ounsel must be allowed a generous latitude in argument . . . ." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 16–17, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

We conclude that the challenged remark fell within the bounds of proper commentary. We fail to see how the prosecutor's remark impugned the role of the defense attorney. Additionally, after the defendant objected to the remark, the court sustained his objection and issued a curative instruction.

II

The defendant also claims that at five points during closing arguments, the prosecutor referred to facts that were not in evidence. The defendant maintains that the prosecutor's remarks resulted in a pattern of misconduct that prejudiced the defendant. The following additional facts are relevant to our review of the defendant's remaining prosecutorial misconduct claims.

First, the defendant contends that the prosecutor improperly referred to facts that were not in evidence when, in rebuttal argument, the prosecutor referred to Barrett's initial statement to police. During the trial, defense counsel cross-examined Barrett and asked her several questions about her felony conviction and a pending criminal case. To counter any suggestion by the defense that Barrett was motivated to testify for the state in the hope that she would find some leniency in her pending criminal case, the prosecutor attempted

to submit the transcript of Barrett's original interview with the police. Despite the defendant's objection, the court allowed the prosecutor either to read the relevant portions of the statement into the record or to question Barrett about specific statements that she had made to the police. Later, during closing arguments, the prosecutor stated that "defense counsel claims [Barrett] has a case pending across the street [in another courthouse]. The problem with their claim for her motive for testifying [is that] she gave the same exact statement to the police department six months prior to her arrest . . . ." The defendant objected, claiming that the substance of the statement given to the police was not in evidence. The court overruled the objection because the prosecutor questioned Barrett about the date of her statement to police and the substance of that statement. The court then instructed: "It's for the jury's recollection as to the facts."

Shortly thereafter, as the prosecutor continued her final closing argument, she suggested that one of the defense witnesses, the defendant's young daughter, Treanna Nixon, had been told what to say during her testimony. At trial, the prosecutor had asked Treanna Nixon whether the public defender had helped her with her answers for trial. Treanna Nixon responded that she had discussed her answers with the public defender prior to the trial. During closing argument, the prosecutor stated that the daughter "is now forced to go into a courtroom and, as she admitted on the [witness] stand, talked to you the way [the] public defender's investigator had instructed her she would be questioned and instructed her on how to answer." The defendant objected on the ground that the prosecutor's remark mischaracterized Treanna Nixon's testimony. The court overruled the objection and instructed the jury that its recollection of the facts controlled.

The defendant also contends that the prosecutor improperly referred to facts that were not in evidence when, on two occasions, the prosecutor stated that certain substances collected by the police were blood. The defendant objected and maintained that the determination as to whether the substance on the knife was blood was not properly established. The court sustained the objection because the evidence submitted consisted only of presumptive tests. The defendant objected to the prosecutor's reference regarding possible blood found on the knife, and the court sustained the objection.

Shortly thereafter, the defendant contends, the prosecutor improperly referred to the defendant's height and weight in relation to the victim. The defendant objected on the ground that the height and weight of the defendant was never introduced through evidence or testimony. The prosecutor withdrew the comment before the judge ruled on the objection.

The defendant's final claim of prosecutorial misconduct relates to the prosecutor's comment that the defendant did not speak to the police on the night of the incident. The defendant objected, and the court sustained the objection. The court then issued a curative instruction, explaining to the jury that "the defendant has no obligation to testify. It's the state that always has the burden of proof. So, you cannot hold it against the defendant for not testifying or not speaking on the matter to police. . . . He had no obligation [to speak to the police] that night. When he did choose to speak to the police, [it] was at his own choice."

The defendant's prosecutorial misconduct claims rest on his contention that he was deprived of his right to a fair trial by a pattern of misconduct on the part of the prosecutor. The defendant alleges that the majority of the alleged instances of misconduct consist of the

prosecutor's reference to facts that were not in evidence during closing arguments. "A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002). Furthermore, "[i]t is well established that the evaluation of [witnesses'] testimony and credibility are wholly within the province of the trier of fact. . . . The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Citation omitted; internal quotation marks omitted.) *State* v. *Spencer*, 81 Conn. App. 320, 327–28, 840 A.2d 7, cert. granted on other grounds, 269 Conn. 907, 852 A.2d 738 (2004). "[T]he state may [however] properly respond to inferences raised by the defendant's closing argument." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 717.

In this case, the defendant presents a variety of comments, which he claims were examples of the prosecutor's reference to facts that were not in evidence. All of the allegedly improper remarks were made during closing arguments. The defendant, however, fails to

illustrate how the prosecutor's statements constitute references to facts that were not in evidence.

The record reflects that Barrett and Treanna Nixon both testified at trial. Barrett's original statement to the police was introduced into evidence through questioning by the prosecutor. In addition, Treanna Nixon admitted that she went over her answers for trial with defense counsel. The prosecutor's remarks appear to be an attempt to invite the jury to draw reasonable inferences on the basis of the testimony of the two witnesses and were not improper. Nevertheless, any impropriety in the prosecutor's remarks regarding Treanna Nixon's testimony was addressed by the court in a brief instruction. The defendant's objection to the remarks made about her testimony was not specific. The court, in responding to the defendant's objection, which was based on a mischaracterization of the witness' testimony, properly instructed the jury that it was the jury's recollection of the facts that controlled.

The defendant contends that the prosecutor's reference to the defendant's height and weight, in relation to that of the victim, was improper. Although that was an improper remark, the prosecutor withdrew the statement as soon as the defendant objected.

As for the defendant's remaining claims, we conclude that the remarks were improper. Nevertheless, those improprieties were addressed by the court in a curative instruction. When the prosecutor referred to blood evidence, the defendant objected. The objection was sustained, and the court provided a brief instruction to the jury, explaining that a presumptive test did not rise to the level of proving that the substance was blood. The court also issued a curative instruction when the prosecutor made reference to the defendant's failure to go to the police on the night of the incident.

Although the defendant has provided this court with a detailed account of the various statements that he alleged were improper, he has provided very little analysis regarding the reasons why those comments constituted misconduct. Although some of the prosecutor's remarks were improper, we conclude that they did not prejudice the defendant.

"When raising prosecutorial misconduct claims, the burden is on the defendant to show that the prosecutor's remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted . . . ." *State* v. *Jarrett*, 82 Conn. App. 489, 504, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). Although certain remarks made by the prosecutor may be deemed imprudent in hindsight, such isolated and brief episodes as occurred here do not implicate the defendant's constitutional right to due process. Indeed, the infrequency of the misconduct limits its effect. See id., 504–505. The prosecutor's remarks in the present case were infrequent and limited to closing argument. Moreover, the prejudicial effect of several of the allegedly improper remarks was mitigated by a curative instruction.

Accordingly, we conclude that the defendant has not satisfied his burden of showing that the prosecutor's conduct was blatantly egregious or that it so infected the trial with unfairness as to make the resulting conviction a denial of due process.

The judgment is affirmed.

In this opinion the other judges concurred.