******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES
MICHAEL FASANELLI
(AC 36532)

Gruendel, Prescott and Schaller, Js.

*Argued November 16, 2015—officially released February 16, 2016*

(Appeal from Superior Court, judicial district of New
Britain, Alander, J.)

*Richard E. Condon, Jr.*, senior assistant public
defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *Brian Preleski*, state's
attorney, and *Kevin J. Murphy*, former supervisory
assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, James Michael Fasanelli, appeals from the judgment of conviction, rendered after a jury trial, of one count of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). On appeal, the defendant claims that he was deprived of his constitutional right to a fair trial as a result of prosecutorial impropriety during closing arguments. We disagree that the prosecutor's arguments were improper and, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In September, 2010, William Fredericks contacted Detective Louis Palmieri of the Southington Police Department about becoming a confidential informant in narcotics investigations. Upon meeting with the police, Fredericks informed them that he had received information from a third party who said that Fredericks could purchase heroin from the defendant at the Southington Motor Lodge (Lodge). Fredericks had been selling narcotics at this time and had criminal charges pending against him for third degree burglary and violation of probation.

On September 20, 2010, Fredericks contacted Detective Palmieri and agreed to participate in a controlled narcotics buy from the defendant. They arranged to meet at the Cadillac Ranch, located approximately two hundred yards from the Lodge. Fredericks met with Palmieri and Detective Kyle Dobratz, who patted down Fredericks and found no narcotics on his person. The detectives then outfitted Fredericks with a one-way audio recorder and twenty dollars. Officer Mark DiBattista monitored the audio device from a separate vehicle, which was parked so that he could view the defendant's room at the Lodge.

Once equipped, Fredericks walked from the Cadillac Ranch to the Lodge, monitored audibly by Officer DiBattista the entire time. Fredericks walked to the defendant's door at the Lodge and knocked. The defendant opened the door and a short conversation between Fredericks and the defendant was recorded. During the conversation, Fredericks inquired as to how many "bags" the defendant could "spot . . . ." The defendant responded two. Fredericks asked if the defendant could "do them for ten," to which the defendant responded, "[n]ope." Fredericks then gave the defendant twenty dollars in exchange for the two bags of heroin and inquired as to how long it would take for the defendant to acquire more bags. The defendant and Fredericks planned to meet again later, and Fredericks began walking back to the Cadillac Ranch.

Upon arriving back at the Cadillac Ranch, Fredericks gave Detective Palmieri two small bags of heroin that he had obtained from the defendant. Detective Palmieri

then searched Fredericks for additional drugs and money. Fredericks informed Detective Palmieri that he could buy additional bags of heroin from the defendant later that night.

Later that night, Fredericks again met with Detectives Palmieri and Dobratz at the Cadillac Ranch, and they followed the same procedures as before. The detectives searched Fredericks and wired him with the audio recording device. Fredericks then walked to the Lodge, knocked on the defendant's door, and entered the room. Fredericks allegedly[1] exchanged thirty dollars with the defendant for three bags of heroin. Fredericks returned to the Cadillac Ranch and gave the three bags of heroin to Detective Palmieri. Significant portions of the audio recording of this transaction between the defendant and Fredericks were inaudible due to radio interference.

On January 10, 2011, Detective Dobratz served an arrest warrant on the defendant, charging him with two counts of sale of narcotics in violation of § 21a-278 (b), one count for each transaction on September 20, 2010. After a jury trial, the defendant was convicted on count one (first transaction), and acquitted on count two (second transaction). The defendant was sentenced to eight years incarceration suspended after five years, followed by three years of probation. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the prosecutor deprived him of his due process right to a fair trial by committing various acts of prosecutorial impropriety during his initial and rebuttal closing arguments to the jury. In particular, the defendant claims that the prosecutor improperly (1) impugned the role and integrity of defense counsel, (2) expressed his personal opinion by vouching for the credibility of a witness, and (3) argued facts not in evidence. The state argues that the prosecutor's comments were not improper. Alternatively, the state contends that even if some of the prosecutor's comments were improper, none of them deprived the defendant of a fair trial. We disagree with the defendant that the prosecutor's comments were improper.

We begin with the applicable standard of review and guiding legal principles. Although the defendant did not preserve his claim of prosecutorial impropriety by objecting to the alleged improprieties at trial, "[o]nce prosecutorial impropriety has been alleged . . . it is unnecessary for a defendant to seek to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and it is unnecessary for an appellate court to review the defendant's claim under *Golding*." (Footnote omitted.) *State* v. *Fauci*, 282 Conn. 23, 33, 917 A.2d 978 (2007). "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine

whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial."[2] (Citations omitted.) Id., 32.

"We are mindful throughout this inquiry, however, of the unique responsibilities of the prosecutor in our judicial system. A prosecutor is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his [or her] office, [the prosecutor] usually exercises great influence [on] jurors. [The prosecutor's] conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he [or she] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. . . . That is not to say, however, that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Indeed, this court give[s] the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The state's attorney should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows, or the like." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, 308 Conn. 412, 435, 64 A.3d 91 (2013).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however, counsel] must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Ciullo*, 314 Conn. 28, 37, 100 A.3d 779 (2014). "[Although] the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) Id., 38.

## I

The defendant first claims that, in his closing arguments, the prosecutor improperly denigrated defense counsel. Specifically, he claims that the prosecutor's remarks improperly implied that defense counsel was using standard defense tactics and was focusing on irrelevant inconsistencies in order to deceive the jury. The state responds that the prosecutor's comments were proper responses to defense counsel's closing argument because they challenged the theory of the defense, not the role or integrity of defense counsel, and were closely tied to the evidence. We agree with the state.

The following additional facts are relevant to this claim. During the course of the trial, defense counsel cross-examined the state's witnesses regarding a variety of inconsistencies between their trial testimony and their prior sworn statements. Fredericks and Detective Palmieri were both questioned by defense counsel about an inconsistency between their trial testimony and a prior sworn statement, written by Detective Palmieri and signed by Fredericks, as to whether the first narcotics transaction occurred outside of the defendant's room or in the doorway of the room. Fredericks' sworn statement stated that the first transaction occurred outside the room, but Fredericks testified at trial that this was incorrect, that he had been in the doorway, although he did not fully enter the room. Defense counsel also cross-examined Fredericks and Detective Palmieri about the fact that the sworn statement was dated September 20, 2010, the date of the transaction, but was not signed until September 23, 2010, implying that there was some inconsistency as to when the sworn statement was actually written and suggesting that the sworn statement may not be accurate if written three days after the event occurred.

On cross-examination of Officer DiBattista, defense counsel also highlighted the inconsistencies between Officer DiBattista's trial testimony and his supplemental police report. In the report, Officer DiBattista wrote that "[s]urveillance [u]nits observed [Fredericks] enter the room, [the defendant] handed [Fredericks] (3) packages of heroin and [Fredericks] handed [the defendant] the [p]olice recorded money." At trial, however, Officer DiBattista, the only person who surveilled the transaction, stated that he did not actually see any exchange of money or narcotics; rather, his report included both his personal observations and information provided by Fredericks.

In the prosecutor's initial summation, he mentioned defense counsel's focus on these inconsistencies: "I'm going to repeat this a couple times, but it's really important you use your common sense. Why, *because I'm sure the defense is going to point out every time*

*where someone put a period instead of a comma, or put a twenty-three instead of a twenty, but you have to decide, is that important*? Does that mean that someone's lying? Again, that's where your life experience and your common sense come into play. *It is defense's job to poke holes in the state's case.* And so you have to decide as representatives of the community, okay, is that a serious deficiency. Is that something that causes me to not believe this happened, or is that just something that human beings do, make mistakes." (Emphasis added.)

In response, defense counsel, in line with his defense strategy during cross-examination, argued that the inconsistencies in the testimony of the state's witnesses were not merely small mistakes, but were significant enough to create reasonable doubt as to whether a drug transaction occurred because the state's witnesses were not credible: "The state said we're talking about the difference between a period and a comma. We're not talking about the difference between a period and a comma, we're talking about the difference between whether something happened outside versus whether something happened inside. We're talking about whether something happened in—whether somebody was able to see something happen, or whether somebody was able not to see something happen because of where they were in their vantage point. We're talking about credibility. We're talking about truth, and we're talking about who's testifying truthfully and who isn't."

Defense counsel then attacked at great length the credibility of the state's witnesses, restating the inconsistencies that were brought to light on cross-examination. Toward the end of his closing argument, defense counsel, relying on these inconsistencies, argued that Fredericks had concealed the heroin bags on his person prior to the transactions in order to set up the defendant in hopes of receiving a reduced sentence in his own pending cases in exchange for being a confidential informant and testifying against the defendant. He further argued that there was nothing on the audio recording from the first transaction to suggest that drugs were even involved, or, at most, the audio recording from the first transaction only established a postponed drug transaction.

In rebuttal, regarding Officer DiBattista lying about having seen the first drug transaction actually take place, the prosecutor argued: "If Officer DiBattista wanted to tell you an untruth, to say something that wasn't true, how easy would it have been for him to sit up here and tell you, hey—uh—I saw the defendant passing the drugs to William Fredericks. . . . [H]e has his reports. He could sit up there and just mouth that out and then you wouldn't have any inconsistency at all. But what do you have? You have a person telling you the truth. What they remember—what—and their

recollection was, well, I didn't actually see him passing the drugs. But again, if he was—*if the defense makes a big deal about all these inconsistencies*, if Officer DiBattista wanted to lie, to tell you an untruth about what happened here, the easiest thing in the world would have been to give you exactly what was written in that report. And there's nobody would be *hitting you up for*, *oh*, *this is inconsistent*. I submit to you that the reason why that's the case is because he just told you he had a picture in his mind what happened, he told you exactly what he remembered what he saw." (Emphasis added.)

The prosecutor then argued that for almost every inconsistency there was an explanation: "I mean, just to give you an example of how the defense has absolutely *whittled down*. You remember there was this thing about the statement given on September 20th? And remember September 20th is where the—uh—is at the top of the page. And yeah, I know you wrote September 23rd at the bottom. You remember all that? . . . I mean, *this is the job of the defense*, but it doesn't mean that you have to decide if those are important inconsistencies." (Emphasis added.)

As to defense counsel's argument that the audio recording of the first transaction was not proof of a drug transaction, or, at most, was proof of a postponed drug transaction, the prosecutor argued: "And is there really any dispute that the first tape is a drug transaction? I mean, *I know the defense's job is to try to say*, *oh*, *here's the explanation*. This is the most damaging piece of evidence, obviously, because what you have in here are two things. One is, you have the defendant's voice, and you have a drug transaction. When somebody is saying—Fredericks is saying how many of those bags can you spot? Well, he's talking about drugs. When the defendant says, I only have two left right now. What's he talking about? I mean, again, and *this is the defense's job*, *to try to stir up*, *you know*, *some confusion here*. And if you listen to the whole tape, is there any question in [your] mind they're talking about a drug transaction?" (Emphasis added.)

We turn then to the authorities relevant to this claim. "It has been held improper for the prosecutor to impugn the role of defense counsel. . . . In particular, [i]t is improper for a prosecutor to tell a jury, explicitly or implicitly, that defense counsel is employing standard tactics used in all trials, because such an argument relies on facts not in evidence and has no bearing on the issue before the jury, namely, the guilt or innocence of the defendant." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 566, 34 A.3d 370 (2012). "There is a distinction [however] between argument that disparages the integrity or role of defense counsel and argument that disparages a theory of defense." *State* v. *Orellana*, 89 Conn. App. 71, 101, 872 A.2d 506,

cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

"Closing arguments of counsel . . . are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. . . . [S]ome leeway must be afforded to the advocates in offering arguments to the jury in final argument. . . . [C]ounsel must be allowed a generous latitude in argument . . . ." (Internal quotation marks omitted.) *State* v. *Nixon*, 91 Conn. App. 333, 339, 880 A.2d 199, cert. denied, 276 Conn. 911, 886 A.2d 426 (2005).

Our Supreme Court has repeatedly frowned upon a prosecutor's use of terms and phrases that imply that defense counsel "had not based his argument on fact or reason, but had intended to mislead the jury by means of an artfully deceptive argument." (Internal quotation marks omitted.) *State* v. *Outing*, 298 Conn. 34, 85, 3 A.3d 1 (2010), cert. denied, 562 U.S. 1225, 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011); see also *State* v. *Albino*, 312 Conn. 763, 776–77, 97 A.3d 478 (2014) (holding improper prosecutor's comparison of defense counsel's tactics to octopus' defense mechanism of releasing ink to hide and deceive); *State* v. *Maguire*, 310 Conn. 535, 557, 78 A.3d 828 (2013) ("smoke and mirrors" was improper because it implied deception); but see *State* v. *Fauci*, supra, 282 Conn. 39–40 (holding "red herring" to be proper because it was in response to defense counsel's theory of defense); *State* v. *Nixon*, supra, 91 Conn. App. 338 ("defendant will most likely try to distract you from the big picture" not improper [internal quotation marks omitted]); *State* v. *Young*, 76 Conn. App. 392, 405, 819 A.2d 884 (prosecutor's comment that jury should not to be " 'fooled' " or distracted by defense counsel's argument was proper), cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003); *State* v. *Jenkins*, 70 Conn. App. 515, 536–38, 800 A.2d 1200 ("'diverting you from the facts' " not improper), cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002).

The defendant contends that the prosecutor improperly denigrated defense counsel by implying that defense counsel was being deceitful and was using standard defense tactics when he stated: (1) "I'm sure the defense is going to point out every time where someone put a period instead of a comma . . . . It is defense's job to poke holes in the state's case"; (2) "the defense makes a big deal about all these inconsistencies . . . [and is] hitting you up for, oh, this is inconsistent"; (3) "the defense has absolutely whittled [the evidence] down"; (4) "this is the job of the defense"; and (5) "I know the defense's job is to try to say, oh, here's the explanation. . . . [T]his is the defense's job, to try to stir up, you know, some confusion here." We do not agree.

When read in context, the challenged comments were not improper. The prosecutor did not attack defense

counsel; rather, each of the challenged comments attacked the theory of the defendant that these inconsistencies were important because they created reasonable doubt as to whether there was a drug transaction in which the defendant was involved. By stating that defense counsel would "point out" the inconsistencies and that he had in fact made "a big deal" about them in his closing argument, the prosecutor attempted to rebut the theory of defense, rather than denigrate defense counsel by implying that he was emphasizing minor inconsistencies in order to deceive the jury. During closing arguments, the prosecutor linked these comments back to the record, which showed that these inconsistencies existed and that defense counsel had repeatedly emphasized them. The prosecutor offered explanations for these inconsistencies, supported by evidence in the record, and argued that these inconsistencies did not discredit the state's witnesses. Thus, in context, the prosecutor's comments were based on evidence in the record and attacked only the theory of defense. Accordingly, they were proper.

Additionally, the prosecutor did not imply that defense counsel was attempting to deceive the jury when the prosecutor used the phrases, "stir up . . . confusion," and "poke holes . . . ." Comments like "smoke and mirrors" are improper because they insinuate that defense counsel is being deceptive. In the present case, "stir up . . . confusion" and "poke holes" are not the practical equivalent of "smoke and mirrors." These phrases are more akin to "red herring"; "distract"; "fooled"; and "divert you from the facts", which our appellate courts have concluded are not improper because they do not imply that defense counsel is being deceptive. See *State* v. *Fauci*, supra, 282 Conn. 40; *State* v. *Nixon*, supra, 91 Conn. App. 338–39; *State* v. *Young*, supra, 76 Conn. App. 405; *State* v. *Jenkins*, supra, 70 Conn. App. 538. The prosecutor simply responded to defense counsel's argument that the inconsistencies in the testimony of the state's witnesses were significant enough to destroy the witnesses' credibility and create reasonable doubt as to whether a drug transaction occurred.

Additionally, the prosecutor did not imply that defense counsel used standard defense tactics. See *State* v. *Payne*, supra, 303 Conn. 566. In three comments, the prosecutor argued that it was "the defense's job" to either highlight inconsistencies or to offer explanations for potentially damning evidence. In isolation, these comments may appear improper and we caution attorneys against using such generic language. In context, however, all three comments were linked to the evidence presented at trial and responded to defense counsel's closing argument that the inconsistencies discredited the state's witnesses and that the first audiotape was not proof of a drug transaction. Furthermore, a prosecutor must be granted " 'generous latitude' " in

closing arguments; *State* v. *Ciullo*, supra, 314 Conn. 37; and "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning . . . ." (Internal quotation marks omitted.) Id., 48. Thus, despite the general phrasing of the challenged comments, the context shows that they were proper arguments linked to evidence in the record in response to the theory of defense.

As for the prosecutor's comments that the defense "[is] hitting you up for, oh, this is inconsistent," and, "the defense has absolutely whittled down," the defendant takes these comments completely out of context and attempts to morph them into something improper. The "hitting you up" comment responded to the alleged inconsistency between Officer DiBattista's trial testimony and his supplemental buy report as to whether he actually viewed money and/or drugs changing hands during the first transaction. The prosecutor did not imply that defense counsel tried to deceive the jury by overwhelming it with a plethora of irrelevant inconsistencies. Rather, he rebutted the theory of defense by offering an explanation for the inconsistency and asked the jury to draw a reasonable inference that if Officer DiBattista wanted to lie, he could have easily done so by sticking to what he wrote in his report.

As for the "whittled down" comment, the prosecutor did not say that the defense had been deceitful by whittling down the evidence. Rather, in context, it is clear that the prosecutor stated that *he* could whittle down the theory of defense because he could give an explanation for almost every inconsistency. By doing so, the prosecutor did not imply anything negative about defense counsel. In sum, we conclude that the challenged comments of the prosecutor did not denigrate defense counsel or his role, and, therefore, were proper.

II

The defendant next claims that the prosecutor improperly expressed his personal opinion that the state's witness, Fredericks, was credible. The state responds that the prosecutor's comment constituted proper argument because it was based on the evidence produced at trial and the reasonable inferences that the jury could have drawn, and was a proper response to defense counsel's attack on Fredericks' credibility during closing argument. We agree with the state.

During his closing argument, defense counsel vigorously attacked Fredericks' credibility. He discussed at length the inconsistencies in Fredericks' testimony, his criminal background, and his desire to receive a more favorable plea agreement in his pending criminal cases in return for serving as a confidential informant. Defense counsel then offered his own theory that Fredericks, intent on currying favor with the state, set the defendant up by hiding the bags of heroin on his person

prior to the transactions.

In his rebuttal, the prosecutor stated: "[T]he defense wants to make this case, obviously, about . . . Fredericks. . . . Fredericks has a lot of baggage. Although, again, as I said to you before, I submit to you *he testified accurately, truthfully*. He admitted to what his motivations were. He had this case pending, and that's the reason why he became a [confidential informant]." (Emphasis added.) Then the prosecutor addressed the "inconsistency issue[s]." He offered explanations, based on Fredericks' testimony at trial, for the inconsistencies in Fredericks' testimony concerning whether the first transaction occurred outside or inside or in the doorway—Fredericks was trying to distinguish the two transactions with the first being in the doorway and the second being all the way inside the room. The prosecutor then stated that it was up to the jury to "decide if that's important or not."

"[A] prosecutor may not express his [or her] own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Put another way, the prosecutor's opinion carries with it the imprimatur of the [state] and may induce the jury to trust the [state's] judgment rather than its own view of the evidence. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions. . . . However, [i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The state's attorney should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he [or she] is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 40–41. "[W]e must look at the statement, including the use of the pronoun 'I,' as a whole, in determining whether it was an expression of the state's attorney's personal opinion regarding the credibility of witnesses." *State* v. *Fauci*, supra, 282 Conn. 38.

"A prosecutor's mere use of the words 'honest,' 'credible,' or 'truthful' does not, per se, establish prosecutorial impropriety." *State* v. *Ciullo*, supra, 314 Conn. 41. "The distinguishing characteristic of impropriety in this cir-

cumstance is whether the prosecutor asks the jury to believe the testimony of the state's witnesses because the state thinks it is true, on the one hand, or whether the prosecutor asks the jury to believe it because logic reasonably thus dictates." *State* v. *Fauci*, supra, 282 Conn. 48.

In the present case, the prosecutor's comment was not improper. His assertion that Fredericks was credible was based on evidence presented at trial and the reasonable inferences that the jury might have drawn from that evidence. The prosecutor immediately followed the challenged comment with the reasons for why Fredericks was credible: he had been honest about his pending criminal charges and about his hope that his sentence would be lightened in exchange for serving as a confidential informant. Then, throughout his closing argument, the prosecutor explained why Fredericks was credible on the basis of evidence produced at trial. From this evidence, the jury could have reasonably inferred that Fredericks was credible. Additionally, the prosecutor prefaced his comment with, "I submit," and his comment was in direct response to defense counsel's extensive attack on Fredericks' credibility.

Thus, the prosecutor did not ask the jury to believe Fredericks' testimony because the state vouched for his credibility, but because it was logical to do so on the basis of the evidence presented at trial and the reasonable inferences that could be drawn therefrom. We conclude that the prosecutor's comment did not improperly vouch for the credibility of Fredericks, and, therefore, was proper.

## III

Finally, the defendant claims that the prosecutor improperly argued facts not in evidence when he stated to the jury that the defendant had a "deep, very distinctive voice." Once again, the state responds that the prosecutor's comment constituted proper argument that was based on the evidence produced at trial and the reasonable inferences that the jury could have drawn therefrom. We agree with the state.

During trial, the audio recording of the first transaction was admitted as a full exhibit and was played to the jury. Two of the state's witnesses, Detective Dobratz and Officer DiBattista, on the basis of their prior interactions with the defendant during which they heard his voice, identified the second voice on the audio recording as belonging to the defendant, the other voice being that of Fredericks. At no point did defense counsel object to the identifications of the voice on the audio recording as belonging to the defendant. The defendant did not testify at trial, and at no point did the jury hear the defendant speak during the course of the trial.

In his summation, defense counsel questioned: "How do we know that the voice that's on this tape is [the

defendant]? How do we know that? [Fredericks] says it is. . . . But I implore you to listen to the two tapes, listen to them together. See if the tapes—if the voice on the tapes is the same between the two tapes, whether all the voices are the same."

In response, the prosecutor argued: "Didn't [DiBattista] say, I heard that tape, that was the defendant. Didn't . . . Dobratz say, I met with the defendant when I arrested him in the apartment. I spent about a half hour with him then at the police station doing the booking procedure. That's the defendant on the tape. I submit to you there's no dispute that this is the defendant. The deep—you could hear his voice more toward the end of the first tape—*it's a deep very distinct voice.*" (Emphasis added.)

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument. . . . [T]he state may [however] properly respond to inferences raised by the defendant's closing argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002). Furthermore, "[a] prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence." Id., 718.

The defendant in this case argues that the prosecutor's comment about the "deep, very distinct" sound of the defendant's voice improperly included facts not in evidence because no witness testified to the characteristics of the defendant's voice and the jury never heard the defendant speak in court. Although the jurors in the present case did not hear the defendant speak at trial, they did hear the voice, allegedly of the defendant, on the audiotape of the first transaction, which was submitted as a full exhibit. There was also testimony from two of the state's witnesses that was based upon their prior interactions with the defendant that the defendant's voice was on the audiotape. By hearing the tape, the jury could have reasonably inferred that the voice, allegedly of the defendant, on the audiotape was deep and distinctive. Additionally, the jury could have reasonably credited the testimony of the state's witnesses that the voice on the audiotape belonged to the defendant. Thus, logically, the jury could have reasonably inferred from the evidence produced at trial the following syllogism: If the voice on the audio recording is deep and distinctive and if the voice on the audio recording is the defendant's voice, then the defendant's voice is deep and distinctive. In commenting on the characteristics of the defendant's voice, the prosecutor

did not invite sheer speculation unconnected to the evidence; rather, he invited the jury to draw a reasonable inference from the evidence.

Furthermore, the prosecutor was responding to inferences raised by defense counsel that there was no evidence that it was the defendant's voice on the audio recording. In essence, the prosecutor was arguing that Officer DiBattista's and Detective Dobratz' identifications of the defendant as the second speaker on the audio recording were credible because the voice on the tape, which had been identified as the defendant's voice, was deep and distinctive; the more distinct the voice, the more credible the identification of the speaker. Therefore, we conclude that the prosecutor's comment was proper because he did not rely on facts not in evidence when he stated that the defendant had a "deep, very distinct voice" during his rebuttal closing summation.

In sum, we conclude that none of the challenged comments of the prosecutor were improper. Accordingly, the defendant was not deprived of his right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury acquitted the defendant of the count relating to this transaction.

[2] A reviewing court must apply the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), to decide whether an impropriety denied the defendant his due process right to a fair trial. These factors include a consideration of the extent to which the impropriety was invited by defense counsel's conduct or argument, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the strength of any curative measures taken, and the strength of the state's case. Id. Because we determine that no impropriety occurred, we are not required to engage in this analysis.